**SO ORDERED.**

**SIGNED this 24th day of May, 2011.**

_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE

_____

# United States Bankruptcy Court
### Western District of Texas
### San Antonio Division

| In re | BANKR. CASE NO. |
|---|---|
| LEGAL XTRANET, INC. | 11-51042 |
| Debtor | |

| | |
|---|---|
| LEGAL XTRANET, INC. D/B/A/ ELUMICOR<br><br>       *Plaintiff,*<br>v.<br><br>AT&T MANAGEMENT SERVICES, L.P. F/K/A SBC MANAGEMENT SERVICES, L.P.<br><br>       *Defendant.* | ADV. NO. 11-05042 |

**DECISION AND ORDER ON DEFENDANT'S MOTION TO REMAND**

This decision and order resolves a motion to remand a matter removed to this court the same day the bankruptcy petition was filed. Almost immediately, the Defendant ("AT&T") requested remand, based upon the theories of mandatory abstention or, alternatively, permissive abstention/equitable remand. AT&T essentially argued that LXI's suit raised only state law claims and was at best "related to" LXI's bankruptcy case. AT&T further argued that mandatory abstention applied because this court only had jurisdiction, if at all, under the "related to" prong of 28 U.S.C. § 1334 and because AT&T's evidence showed that the case could be timely adjudicated in state court. Finally, AT&T argued that permissive abstention or equitable remand would also be appropriate.

LXI, the Plaintiff in the suit, and the Debtor in this bankruptcy case, naturally, objected to AT&T's motion to remand. First, LXI argued that mandatory abstention did not apply because LXI's claims against AT&T were core proceedings under various subsections of section 157(b)(2) of the Code. LXI asserted that its claims against AT&T were "in the nature of offsets against or attempts to limit the claims of what may well be one of Debtor's largest creditors" (Resp., p. 5.) and thus, as analogous to a response to a proof of claim, the claims against AT&T constituted core proceedings. LXI also argued that its suit fell within this court's core jurisdiction because it included a request for a determination that AT&T is responsible for all sales taxes assessed by the comptroller. LXI maintained that this claim arose under the Bankruptcy Code because it involved the determination of tax liability, liquidation of the assets of the estate and administration of the estate. Lastly, LXI argued that AT&T was also not entitled to equitable remand because consideration of the relevant factors actually favored keeping the case in the bankruptcy court.

**Discussion**

LXI's state court suit against AT&T seeks a declaratory judgment regarding a contract that had governed the parties' relationship for many years. In December 2010, AT&T gave notice of its intention to terminate that contract pursuant to a provision of that contract. The ensuing dispute arose over the extent (if any) to which LXI might be entitled to certain protections for its claims of proprietary interest in certain software, and for its claims to trade secret protection. The dispute also centered around the extent (if any) to which LXI might be entitled to compensation for work associated with data transfer back to AT&T and/or its new contracting entity, and if so, at what rate. The declaratory judgment action seeks a determination that: 1) LXI is not required to turn over to AT&T its documents in LXI's proprietary and trade secret software format; 2) the Fourth Rate Amendment whereby AT&T pays an annual [redacted] repository management fee and thereafter only [redacted] cents per page for all other services is an effective amendment of the Master Agreement and was the rate for Electronic Data Discovery in effect at the time of the termination of the Master Agreement; 3) the applicable rate for the export and migration of AT&T's documents is: (a) [redacted] cents per page in accordance with the fourth Amendment of the Master Agreement, plus (b) depending on the

2

length of time of such an export, an equal and proportional share of the [redacted] repository management annual fee; and 4) AT&T is responsible for any and all sales taxes assessed by the Texas Comptroller of Public Accountants for the audit period from July 1, 2006, through December 31, 2009, and any other subsequent periods. In short, LXI's suit requires that the court interpret the parties' contract and determine whether AT&T is liable for sales taxes assessed in connection with LXI's provision of services to AT&T. AT&T filed counterclaims against LXI for conversion and breach of contract and sought injunctive relief. AT&T's counterclaims have since been withdrawn. Its request for injunctive relief was essentially resolved after the matter had been removed to this court. Thus, all that remains to be tried are the various declaratory matters described above. Whether that trial should remain in the federal system or should instead be remanded to the state court is the subject of this decision and order.

As an initial matter, the court must address whether the remand request should be evaluated based on the pleadings as they stood as of the removal, or as they stood when they were later amended post-motion but prior to the hearing on the motion for remand. The issue arises because, shortly before the hearing, AT&T amended its answer and counterclaim by dropping its counterclaims (but asserting a defensive claim for recoupment). The case law offers a clear answer: the court must determine its jurisdiction based on the pleadings as of the time LXI filed its notice of removal. *See Bissonnet Invs. Llc v. Quinlan (in Re Bissonnet Invs. Llc)*, 320 F.3d 520, 525 (5th Cir. 2003) ("The existence of subject matter jurisdiction is determined at the time of removal.") (citing *Arnold v. Garlock*, 278 F.3d 426, 434 (5th Cir. 2002); *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) ("[T]o determine whether jurisdiction is present for removal, we consider the claims in the state court petition as they existed at the time of removal."); *Enron Corp. Secs. v. Enron Corp. (In re Enron Corp. Secs.)*, 2005 U.S. Dist. LEXIS 34029, at *15-16 (S.D. Tex. July 25, 2005) ("Jurisdiction is determined at the time of removal and the right to remove depends on the plaintiff's pleading at the time of petition for removal … The same is true for removals under the much broader grant of 'related to' bankruptcy jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 1452(a).") (internal citations omitted). We thus consider the pleadings as they stood as of the date of filing of the motion for remand.

Looking at the parties' pleadings as they existed at the time of removal, the first issue to be addressed is whether the court has jurisdiction over the parties' state court proceeding and, if so, whether each cause of action asserted within that proceeding is core or non-core. *See CBI Eastchase, L.P., et. al. v. Farris, et. al. (In re e2 Communications, Inc.)*, 2005 Bankr. LEXIS 3250, at *8 (Bankr. N.D. Tex. Mar. 24, 2005) (noting that before addressing the issues of abstention and equitable remand, "the first question is whether this Court has jurisdiction over the claims asserted in the State Court Action under section 1334"). Additionally, "'any doubts concerning removal must be resolved against removal and in favor of remanding the case back to state court… [and, the removing party] bear[s] the burden of establishing federal jurisdiction under section 1334." *Id.* (citations omitted).

3

Section 1334 provides in relevant part:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(a)-(b). The term 'cases under title 11' refers to the bankruptcy petition itself, which is not applicable here. *See In re e2 Communications*, 2005 Bankr. LEXIS 3250, at *9 n.5. Thus, only subsection (b) is relevant to this dispute. A matter falls within the court's subject matter jurisdiction if the matter arises under a provision of title 11, or if the matter arises in or is related to the bankruptcy case. *See id.* Civil proceedings that arise under title 11 or arise in cases under title 11 are deemed "core" matters; while civil proceedings that are related to a title 11 case are deemed "non-core" matters. *See id.*; *see also Morrison v. Western Builders of Amarillo, Inc. (In re Morrison)*, 555 F.3d 473, 479 (5th Cir. 2009). As succinctly explained by the bankruptcy court for the Northern District of Texas,

'Arising under' jurisdiction involves causes of action created or determined by a statutory provision of title 11. 'Arising in' jurisdiction is not based on a right expressly created by title 11, but is based on claims that have no existence outside of bankruptcy. Prior to confirmation of a plan of reorganization, 'related to' jurisdiction exists if 'the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy.

*In re e2 Communications*, 2005 Bankr. LEXIS 3250, at *9-10 n.5 (emphasis original) (citations omitted); *see also In re Morrison*, 555 F.3d at 479. A civil proceeding need not "necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *In re e2 Communications*, 2005 Bankr. LEXIS 3250, at *10 n. 5; *Equity Broad Corp. v. Shubert (In re Winstar Communs. Inc.)*, 284 B.R. 40, 50 (Bankr. D. Del. 2002) (citing *Pacor v. Higgins*, 743 F.2d 984 (3d Cir. 1984).

The Fifth Circuit has said that,

4

> For the purpose of determining whether a particular matter falls within bankruptcy
> jurisdiction, it is not necessary to distinguish between proceedings 'arising under,'
> 'arising in a case under,' or 'related to a case under,' title 11. These references operate
> conjunctively to define the scope of jurisdiction. …

*In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987). *Wood* presumed that "related to" jurisdiction
represented the farthest reaches of bankruptcy subject matter jurisdiction, and so concluded that a
court could cease looking further so long as it could find that a matter was at least related to the
administration of the case. *See id.*[1] If this lawsuit is at least related to the case, then the court's
subject matter jurisdiction will have been found. If it is not, then the court will have to look to
whether it might in some sense be said to have arisen under a provision of title 11 or to have
arisen in the case. As the case was removed to this court on the same day as the bankruptcy
petition was filed, however, it is unlikely that the latter two reservoirs of jurisdiction could apply
here. If there is subject matter jurisdiction, the court will then discuss whether these claims are
core or non-core, a consideration particularly relevant to the claim for mandatory abstention.[2]

LXI argued that this court has jurisdiction over its state court suit under 28 U.S.C. § 1334
because its claims against AT&T constitute core proceedings under 28 U.S.C. §§ 157(b)(2)(A),
(B), (C) and (O) (which means that there is necessarily subject matter jurisdiction, *see Matter of
Seven Elves*, ). LXI also maintained that its claim for a declaration that AT&T is responsible for
all sales taxes constitutes a core proceeding based on the court's authority to determine tax
liability issues under section 505(a)(1) of the Code. AT&T concedes that all the claims and

---

[1] It bears noting that *Wood* has been grossly misinterpreted over the years as courts have fallen into one of
the more elementary of logical fallacies in applying *Wood's* holding. If "related to" jurisdiction is found, then of
course one need look no further for a basis for subject matter jurisdiction. The converse, however, is not true.
That is, if "related to" jurisdiction is *not* found, that does not mean that there can be no bankruptcy subject
matter jurisdiction. *See In re Simmons*, 205 B.R. 834, 841 n.3 (Bankr. W.D. Tex. 1997). A matter might, for
example, *not* be "related to" the bankruptcy case (in the sense of having a conceivable effect on the
administration of the estate, the formulation adopted by *Wood* for "related to" jurisdiction), yet clearly fall
within the bankruptcy subject matter jurisdiction of the federal courts, by virtue of either arising under a
provision of title 11 (dischargeability actions are an example) or arising in the bankruptcy case (an action to
interpret or enforce a sale order post-bankruptcy is an example). *See In re Ames Dept. Stores, Inc.*, 2005 Bankr.
LEXIS 786, at *11-13 (Bankr. S.D.N.Y. 2005). To put the fallacy bluntly, to state that all frogs are green does
not mean that all green things are frogs.

[2] The court here is following the route laid out for it by the Fifth Circuit in *Wood*. There is another approach
that could be taken however, one offered up by the Third Circuit in *Matter of Seven Fields Development Corp.*,
505 F.3d 237, 257 n. 18 (3rd Cir. 2007) There, the Third Circuit suggested (in the context of evaluating post-
confirmation jurisdiction) that a court could *first* consider whether a matter were core or non-core. *See id.* ("a
finding that the case "aris[es] in" the bankruptcy would "kill two birds with one stone" inasmuch as such a
finding conclusively would establish both subject matter jurisdiction and the bankruptcy court's authority to
enter final orders. In that situation, there simply would be no reason to engage in the two-step inquiry [used
in *Resorts International*]").  If the matter were found to be *core*, then the court's inquiry would necessarily be
concluded, as all core matters necessarily fall within the court's subject matter jurisdiction. The same inquiry
would also answer the mandatory abstention issue presented here.

counterclaims in the suit (except for LXI's tax liability claim) fall within the court's "related to" jurisdiction (though it also maintains that these claims and counterclaims are non-core).

The court agrees with AT&T that both LXI's contract-related claims against AT&T and AT&T's counterclaims against LXI are at least "related to" LXI's chapter 11 case. The resolution of LXI's contract claim will have an impact on what is available to pay LXI's creditors as part of LXI's bankruptcy. *See Regal Row Fina, Inc. v. Washington Mutual Bank, FA*, 2004 U.S. Dist. LEXIS 26704, at *11-12 (N.D. Tex. Dec. 9, 2004) (concluding that the court had at least "related to" jurisdiction over debtor's state law claims because "the outcome of this case would have an effect on [debtor's] estate since any recovery of monetary damages would necessarily accrue to the estate"); *Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc. (In re Mid-Atlantic Handling Sys., LLC)*, 304 B.R. 111, 120 (Bankr. D.N.J. 2003) (finding that "pre-petition state law tortious interference and breach of contract claims" asserted against the debtor were "related to" debtor's chapter 11 case "since the outcome of the underlying lawsuit could alter the Debtor's rights concerning a significant asset of the estate"). As the Fifth Circuit observed in *In re Zale Corp.*:

> [Section 1334's] reference to cases related to bankruptcy cases is primarily intended to encompass tort, contract, and other legal claims by and against the debtor, claims that, were it not for bankruptcy, would be ordinary stand-alone lawsuits between the debtor and others but that section 1334(b) allows to be forced into bankruptcy court so that all claims by and against the debtor can be determined in the same forum. A secondary purpose is to force into the bankruptcy court suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate.

*In re Zale Corp*, 62 F.3d 746, 752 (5th Cir. 1995) (citations and emphasis in original omitted). Although it is not limitless, 'related-to' jurisdiction is broadly conferred so as to 'avoid the inefficiencies of piecemeal adjudication and promote judicial economy by aiding in the efficient and expeditious resolution of all matters connected to the debtor's estate." *Id*., (quoting *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.*), 910 F.2d 784, 787 (11th Cir. 1990)). The claims and counterclaims relating to the contractual relationship fall within the subject matter jurisdiction of the federal courts under section 1334(b)'s "related to" prong.

LXI's request for a declaration that AT&T is responsible for all accrued sales taxes, however, is likely not the subject matter jurisdiction of the federal courts. LXI's complaint seeks a determination that "AT&T is responsible for any and all sales tax assessed by the Texas Comptroller of Public Accounts for the audit period from July 1, 2006, through December 31, 2009, and any other subsequent period." (Resp. to Motion to Remand, p. 5.) LXI argued that section 505(a)(1) of the Code confers bankruptcy jurisdiction over this claim. While the court

6

would clearly have jurisdiction to decide matters involving the tax liabilities of LXI or the *estate* under section 505(a)(1), *see In re Prescription Home Health Care, Inc.*, 316 F.3d 542, 547 (5th Cir. 2003), LXI's claim seeks only a determination of *AT&T's* tax liability. In *In re Prescription Home Health Care, Inc.*, the Fifth Circuit held that section 505(a)(1) of the Code does not confer jurisdiction on bankruptcy courts to decide tax liability issues of non-debtors. *Id*. at 548. In that case, the debtor argued that the bankruptcy court had "related to" jurisdiction to decide the tax liability of a non-debtor officer of the debtor corporation because any assessment of federal tax liability against the non-debtor would jeopardize the success of the debtor's plan of reorganization. *Id*. The court rejected this argument, stating that

> [u]nder [the debtor's] reading of 'related to' jurisdiction, all tax matters could be adjudicated by the bankruptcy court if they could conceivably affect the debtor's estate. Such a reading would render superfluous § 505's grant of jurisdiction to determine the tax liabilities of the debtor or the estate.

*Id*. The court then noted that "[s]ister circuits that have addressed directly whether bankruptcy courts have jurisdiction over the tax liabilities of non-debtors have held that they do not." *Id*. Ultimately, the Fifth Circuit agreed with these sister circuits, concluding that "[t]he bankruptcy court lacked jurisdiction over [the non-debtor's] tax liability." *Id* at 549.

While the Fifth Circuit's decision in *In re Prescription Home Health Care, Inc.* seems to foreclose the possibility that bankruptcy courts could ever have 'related to' jurisdiction over the tax liabilities of non-debtors,[3] one of the circuit court decisions upon which the Fifth Circuit relied actually does not support this conclusion. In *Quattrone Accountants, Inc. v. IRS*, the Third Circuit specifically held that "Section 505 … neither limits nor grants jurisdiction" to determine the tax liability of a non-debtor. 895 F.2d 921, 924 (3d Cir. 1990). As explained by one court,

> [a]lthough it was clear to the Third Circuit that some restriction on the application of section 505(a) was contemplated by Congress—Congress did not intend for bankruptcy courts to become another Tax Court, empowered to determine all tax disputes regardless of the parties—if the debtor requests a determination of the tax liability of a non-debtor under section 505, a bankruptcy court has subject matter jurisdiction to do so if permitted by 28 U.S.C. § 1334, the bankruptcy jurisdictional statute. In other words, the constraint on the broad application of section 505(a) is provided by section 1334. Thus, a bankruptcy court will possess subject matter jurisdiction over a tax dispute under section 505(a) only if the outcome of the dispute is related to the debtor's pending bankruptcy case.

---

[3] Indeed, the bankruptcy court for the Eastern District of Pennsylvania interpreted the Fifth Circuit's decision in *In re Prescription Health Care, Inc.*, as holding that "section 505(a) [] must be restricted solely to those contested matters involving the tax liability of the debtor." *In re Plymouth House Health Care Ctr., Inc.*, 2004 Bankr. LEXIS 2616, at *12 (Bankr. E.D. Pa. Sept. 10, 2004).

*In re Plymouth House Health Care Ctr., Inc.*, 2004 Bankr. LEXIS 2616, at \*13 (Bankr. E.D. Pa. Sept. 10, 2004).

Even were we to apply the standard in *Quattrone*, however, the court does not believe that subject matter jurisdiction over the tax dispute can be found. The state comptroller has filed a proof of claim in the debtor's bankruptcy case, but AT&T is currently disputing in state court the amount of sales tax the Comptroller has claimed is due. This court has previously held that both vendors and purchasers are liable to the state for uncollected sales taxes. *See Szostek v. Tex. State Comptroller of Pub. Accounts*, 429 B.R. 552, 566 (Bankr. W.D. Tex. 2010) (citing *Bullock v. Foley Bros. Dry Goods Corp.*, 802 S.W.2d 835, 838 (Tex. App. Austin—1990)). In *Quattrone*, the Third Circuit stated that the "responsible person" liability of the corporation's principal officer was "entirely separate and distinct from the debtor's liability to the IRS," and ultimately concluded that the officer's liability was not "related to" the corporation's bankruptcy case under section 1334(b)." 895 F.2d at 926-27. While the Third Circuit recognized that if the non-debtor officer were assessed and actually paid his "responsible person" tax liability, the amount the debtor owed to the IRS would decrease, the court nonetheless concluded that this did not amount to a "conceivable effect" on the estate in light of the contingent nature of the payment and the joint and several nature of the debt. *Id. See also Newland v. United States*, 150 B.R. 160-163 (Bankr. S.D. Miss. 1993) (concluding that the bankruptcy court did not have jurisdiction to decide the tax liability of a non-debtor where both the non-debtor and the debtor were liable for the tax at issue, and stating that "'simply because the debtor corporation is also liable for the taxes is no reason for the bankruptcy court to assume jurisdiction over the liability of the non-debtor'… Because [the debtor] remains liable for the taxes whether or not [the non-debtor] is also liable, there was no reason, even if there had been jurisdiction, for the bankruptcy court to adjudicate [the non-debtor's] tax liability.") (internal citation omitted). Here, similarly, both the debtor and AT&T could be held separately liable for the uncollected sales taxes. While AT&T's payment of the tax assessment would reduce or eliminate the debtor's sales tax debt, such a contingency does not confer related to jurisdiction, pursuant to section 505(a)(1), over AT&T's tax liability. *See Quattrone*, 895 F.2d at 927. Lacking jurisdiction over the tax-related claims, the court is constrained to remand that portion of the lawsuit. *See* 28 U.S.C. §1452(a).[4]

Having found subject matter jurisdiction over LXI's contract-related claims and AT&T's counterclaims, the next question is whether LXI's claims and AT&T's counterclaims are core or non-core. Initially, it is important to note that "the 'core proceeding' analysis is properly applied not to the case as a whole, but as to each cause of action within a case." *Davis v. Life Investors*

---

[4] Of course, should LXI wish to seek a determination from this court regarding its own tax liability, LXI remains free to file a separate proceeding under section 505(a)(1) of the Code. Such a proceeding would clearly be core as it would involve a claim "arising under" Title 11. LXI's request for a declaration regarding only AT&T's tax liability, however, should not be decided by this court outside of the context of determining LXI's own liability.

*Ins. Co. of Am.*, 282 B.R. 186, 193 n. 4 (S.D. Miss. 2002); *see also In re Exide Techs.*, 544 F.3d 196, 206 (3d Cir. Del. 2008) ("A single cause of action may include both core and non-core claims. The mere fact that a non-core claim is filed with a core claim will not mean the second claim becomes 'core.'"). In determining whether a particular claim is core or non-core, courts first look to the language of 28 U.S.C. § 157, which sets forth a non-exclusive list of proceedings that are core.  Section 157 provides:

> (2) Core proceedings include, but are not limited to-- (A) matters concerning the administration of the estate; (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 [11 USCS §§ 1101 et seq., 1201 et seq. or 1301 et seq.] but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11; (C) counterclaims by the estate against persons filing claims against the estate; (D) orders in respect to obtaining credit; (E) orders to turn over property of the estate; (F) proceedings to determine, avoid, or recover preferences; (G) motions to terminate, annul, or modify the automatic stay; (H) proceedings to determine, avoid, or recover fraudulent conveyances; (I) determinations as to the dischargeability of particular debts; (J) objections to discharges; (K) determinations of the validity, extent, or priority of liens; (L) confirmations of plans; (M) orders approving the use or lease of property, including the use of cash collateral; (N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and (P) recognition of foreign proceedings and other matters under chapter 15 of title 11 [11 USCS §§ 1501 et seq.].

28 U.S.C. § 157(b)(2). Next, courts engage in a two-step inquiry whereby a claim will be core "'if (1) it invokes a substantive right provided by title 11 or (2) if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case.'" *In re Exide Techs.*, 544 F.3d 196, 207 (3d Cir. 2008) (citations omitted.).

LXI's contract claims against AT&T are non-core. First, the claims neither arise under nor arise in a case under title 11. "'Arising under' jurisdiction involves causes of action created or determined by a statutory provision of title 11." *In re e2 Communications*, 2005 Bankr. LEXIS 3250, at *9-10 n.5 (citations omitted). *See also*, *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987) (noting that a proceeding does not "arise under" Title 11 if it does not invoke a substantive right, created by federal bankruptcy law, that could not exist outside of bankruptcy); *Kovalchick*

*v. Dolbin (In re Kovalchick),* 2006 U.S. Dist. LEXIS 66968, 2006 WL 2707428, at *4 (M.D. Pa. Sept. 19, 2006) (state law claims do not fall within bankruptcy court's "arising under" jurisdiction because they do not invoke substantive rights provided by Title 11); *Wachovia Bank, N.A. v. Carroll,* 2009 U.S. Dist. LEXIS 10175, at *4 ("As these questions initially arose in a state-court proceeding, long before Carroll filed for bankruptcy, this case did not 'arise under' or 'arise in' a title 11 proceeding."). Neither do LXI's state law claims against AT&T 'arise in' LXI's bankruptcy case as they could (and in fact did) exist absent LXI's bankruptcy filing. "Claims that 'arise in' a bankruptcy case are claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case." *In re Seven Fields*, 505 F.3d at 260 (citation omitted); *see also Stoe v. Flaherty,* 436 F.3d 209, 216 (3d Cir. 2006) (noting that matters "arise in" bankruptcy only "if they have no existence outside of the bankruptcy"). Here, LXI commenced the state court lawsuit, involving purely state law issues, before it filed for bankruptcy. LXI's claims against AT&T are non-core. *See Coho Oil & Gas, Inc. v. Finley Res., Inc. (In re Coho Energy, Inc.)*, 309 B.R. 217, 222 (Bankr. N.D. Tex. 2004) (finding that "an action seeking damages for pre-petition breaches of pre-petition contracts and for pre-petition tortious conduct," was "a non-core proceeding which neither arises in nor under title 11").

Although LXI's breach of contract claim against AT&T is non-core, at least one court within the Fifth Circuit has found state law claims to be core where they are "inextricably intertwined with the bankruptcy proceeding." *Regal Row Fina, Inc. v. Washington Mutual Bank*, 2004 U.S. Dist. LEXIS 26704, at *25 (N.D. Tex. Dec. 9, 2004). In *Regal Row*, the debtor filed a suit alleging, inter alia, fraud in a real estate contract against the debtor's largest creditor three days before the debtor filed its chapter 11 petition. The creditor then filed a notice of removal, to which the debtor objected. The court concluded that the debtor's state court suit was a core proceeding under several of the subsections of section 157(b)(2) because the suit "directly affect[ed] the administration of the estate." *Id*. at *20. The court stated,

> [the creditor] is the largest creditor of [the debtor]; it was [the creditor's] collection activity that eventually brought on the filing of the bankruptcy case. [The creditor] has filed a proof of claim in the bankruptcy case and has actively participated in hearing in which [the debtor] sought authority from the bankruptcy court to use [the creditor's] cash collateral … As a result, any recovery that [the debtor] receives from this case would naturally be applied against the indebtedness evidenced by the promissory note executed by [the debtor] in favor of [the creditor].

*Id*. at *20-22. The court went on to state,

Another significant factor is that this case is a proceeding involving the allowance or disallowance of claims or counterclaims or exemptions from property of [the debtor's] estate. 28 U.S.C. § 157(b)(2)(B). [The creditor] contends -- and the court agrees -- that because [the creditor] has filed a proof of claim in [the debtor's] bankruptcy case and because this case is intertwined with its proof of claim, the case necessarily affects the allowance or disallowance of claims against [the debtor's] bankruptcy estate. Thus, before [the debtor] can confirm a reorganization plan in the bankruptcy court, the extent of [the debtor's] net obligation to [the creditor] must be established.

Additionally, the court concludes that this proceeding, if not originally a core proceeding, has been converted into one by [the creditor's] filing of a proof of claim. *See* 28 U.S.C § 157(b)(2)(C). Even though [the creditor's] proof of claim was filed after the plaintiffs filed their state court petition, [the creditor] -- by filing its proof of claim -- converted the plaintiffs' adversary proceeding involving state tort law claims 'related to' [the debtor's] bankruptcy to a proceeding to adjudicate a counterclaim 'arising under' title 11. Numerous courts have found claims asserted by the debtor against a person who has filed proof of claims against the estate to be counterclaims within the meaning of § 157(b)(2)(C), and therefore core proceedings, notwithstanding the fact that the claims were asserted by procedures other than counterclaiming against the proof of claim itself…

Finally, this case is properly considered a core proceeding by virtue of the 'catch-all' provision because the plaintiffs' claims against [the creditor] would likely 'affect[] the liquidation of the assets of the estate or the adjustment of the debtor-creditor . . . relationship.' 28 U.S.C. § 157(b)(2)(O).

*Id*. at 22-25 (internal citations omitted).

The present case can be distinguished from *Regal Row*, however. Most notably, here, AT&T has not filed a proof of claim. Moreover, it is clear that AT&T does not plan to file a proof a claim. AT&T has withdrawn its counterclaims against LXI, asserting only the defense of recoupment. Additionally, AT&T demanded a jury trial and refused to consent to a jury trial in this court. It is clear that AT&T is doing everything in its power to avoid being subject to this court's jurisdiction.

Finally, the court disagrees with *Regal Row's* over-reliance on the catch-all provision of section 157(b)(2)(O) in determining that the debtor's state court suit, filed before the debtor filed for bankruptcy, can constitute a core proceeding. The court does not support the attempt to

11

incorporate "pre-petition causes of action, premised on state law, into the catchall provisions of 28 U.S.C. § 157(b)(2)." *Peterson v. 610 West Owners Corp. (In re 610 West Owners Corp.)*, 219 B.R. 363, 372 (Bankr. S.D.N.Y. 1998) (citation omitted). To do so, "would allow the 'amorphous' catch-all provision to 'emasculate' the Supreme Court's decision in *Marathon*." *Id*.; *see also In re Wood*, 825 F.2d at 95.[5] "Every proceeding [could] be characterized as a core proceeding, because every recovery can change the size of the bankruptcy estate." *Id*. The argument also runs counter to Congress' intent in distinguishing core and non-core claims. *See In re 610 West Owners Corp.*, 219 B.R. at 372. "A proceeding is not 'core' simply because it 'arguably fits within the literal wording' of one of the listed proceedings under § 157(b)(2)." *Hoffmeyer v. Loewen Group Int'l, Inc. (In re Loewen Group Int'l, Inc.)*, 279 B.R. 471, 475 (Bankr. D. Del. 2002). Plaintiff's contract claims in this case are non-core matters.

Finally, AT&T's counterclaims are also non-core. LXI argued that AT&T's counter-claims were core under section 157(b)(2)(B) because they constituted claims against the debtor. This argument would certainly be correct if AT&T filed a proof of claim. *See Steinman v. Spencer (In re Argus Group 1700, Inc.)*, 206 B.R. 737, 747-48 (Bankr. E.D. Pa. 1996) (filing of a proof of claim which asserts the same claims raised against the debtor in a prepetition state court action transforms the state court action into a core proceeding); *see also Davis v. Life Investors Ins. Co. of Am.*, 282 B.R. 186, 193 (S.D. Miss. 2002) (noting that had defendant actually filed any pleadings in state court asserting the same claim as that asserted in its proof of claim, the court would have considered the state court claim core); *In re Best Reception Sys., Inc.*, 220 B.R. 932, 944 (Bankr. E.D. Tenn. 1998) ("Where a party has filed a proof of claim in a debtor's case, any action asserted by that party against the debtor that raises the same issues as those encompassed by the proof of claim is a core proceeding under … § 157(b)(2)(B)"); *Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc. (In re Mid-Atlantic Handling Sys., LLC)*, 304 B.R. 111, 123 (Bankr. D.N.J. 2003) ("Because the proof of claim filed by Maintainco encompasses the same issues as those raised by the removed state law proceeding (in fact, the state court complaint was attached to the proof of claim), the filing, without more, converted the underlying action into a core proceeding under § 157(b)(2)(B)."); *Shubert v. Lucent Techs. Inc. (In re Winstar Communs., Inc.)*, 348 B.R. 234, 247 (Bankr. D. Del. 2005) (finding that "[w]hether [defendant] may have breached the Subcontract … has a direct bearing upon whether [defendant] may recover under its Proof of Claim and if so, in what amount. Therefore the breach of the Subcontract claim falls within the core jurisdiction of the Court.").

---

[5] The Fifth Circuit said that although the language of § 157(b)(2)(O), "'proceedings affecting . . . the estate' is similar in scope to the test of jurisdiction: proceedings having a 'conceivable effect on the estate'. We decline, however, to give such a broad reading to subsection 157(b)(2)(O); otherwise, the entire range of proceedings under bankruptcy jurisdiction would fall within the scope of core proceedings, a result contrary to the ostensible purpose of the 1984 Act. That purpose is to conform the bankruptcy statute to the dictates of *Marathon*." *Wood*, 825 F.2d at 95.

AT&T has not filed a proof of claim, however. What is more, the counterclaims were filed before there was a bankruptcy case pending, so they cannot of themselves be a conscious decision to participate in the distributional process of bankruptcy. Yes, they are claims against the debtor, stayed by the automatic stay. That is not enough to render them the equivalent of proofs of claim. Despite LXI's assertion that AT&T would have to eventually file a proof of claim to preserve its rights in the bankruptcy court, that eventuality is insufficient to deem AT&T's counterclaims core at this time. *See Lennar Corp. v. Briarwood Capital LLC*, 430 B.R. 253, 265 (Bankr. S.D. Fla. 2010) ("In looking at the core versus non-core nature of the removed case, the Court must look solely to the present record, not what may or may not happen in the Bankruptcy Cases."); *In re Asousa Partnership*, 264 B.R. 376, 387 (Bankr.E.D.Pa. 2001) (holding that "when no proof of claim is filed, claims (or counterclaims) asserted against the debtor prepetition are not transformed into core proceedings simply because the debtor files for bankruptcy and removes them") (citing several cases so holding, including *Bevilacqua v. Bevilacqua*, 208 B.R. 11, 16-17 (E.D.N.Y. 1997) and *Beneficial National Bank USA v. Best Reception Systems, Inc.* (*In re Best Reception Systems, Inc.*), 220 B.R. 932, 949-50 (Bankr. E.D. Tenn. 1998)).

In *Lennar Corp. v. Briarwood Capital, LLC*, the Defendant/debtors argued that the pre-petition state court action against them should be considered core because it "asserts claims against the Debtor Defendants and the allowance of claims is expressly within the court's core jurisdiction under 28 U.S.C. § 157(b)(2)(B)." 430 B.R. 253, 264 (Bankr. S.D. Fla. 2010). The court noted that "[i]f [the state court plaintiff] had filed a proof of claim, this argument has some support in the case law." *Id*. (citing cases). The court ultimately concluded that "[i]n the absence of a claim, the case law and clear language of the statute compel a finding that the Florida Action was removed and is pending here solely based on 'related to' jurisdiction." *Id*. Similarly, in *In re Asousa*, the debtor/landlord had initiated a state court suit against a tenant for ejectment and payment of rent. The tenant filed counterclaims against the debtor-landlord based on the debtor-landlord's alleged failure to deliver the premises in a usable condition and failure to make improvements and repairs. The court concluded that the state court action could not be removed to bankruptcy court and treated as a core "objection to claim" proceeding under § 157(b)(2)(B) because the tenant had not filed a proof of claim. 264 B.R. 376, 387.

The Fifth Circuit intimated that the rule is the same in this circuit in *Matter of Wood*:

The filing of the proof invokes the special rules of bankruptcy concerning objections to the claim, estimation of the claim for allowance purposes, and the rights of the claimant to vote on the proposed distribution. Understood in this sense, a claim filed against the estate is a core proceeding because it could arise only in the context of bankruptcy. Of course, the state-law right underlying the claim could be enforced in a state court proceeding absent the bankruptcy, but the

nature of the state proceeding would be different from the nature of the proceeding *following the filing of a proof of claim*.

*Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir. 1987) (emphasis added). Other circuits agree, most notably the Second Circuit. *See S.G. Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips Constructors, Inc.)*, 45 F.3d 702, 705 (2d Cir. 1995) (stating that "[t]he sole fact that the City's state law claim was filed before [the debtor's] petition has no bearing on whether the claim is characterized as core or non-core when a proof of claim has been filed[,] and further stating that "we believe that the determinative factor as to the bankruptcy court's jurisdiction in this case is that the City filed a proof of claim resulting in an adversary proceeding that involved the 'allowance or disallowance of claims against the estate.' 28 U.S.C. § 157(b)(2)(B). In so doing, the City necessarily became a party under the court's core jurisdiction").

Ultimately, the determination of whether AT&T's counterclaims are core or non-core may be purely an intellectual endeavor. Even if the court concluded that AT&T's counterclaims were core, thus precluding application of mandatory abstention to those counterclaims, retaining the counterclaims in this court would be a pointless exercise, as they have been withdrawn. The court cannot "make" AT&T assert claims against the estate if it chooses not to do so. Nonetheless, for the sake of completeness, the court concludes that AT&T's counterclaims are non-core. With this predicate established, the court can turn to AT&T's request for mandatory abstention.

Mandatory abstention is governed by 28 U.S.C. § 1334(c)(2), which reads:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). Mandatory abstention applies to non-core proceedings. *Technomedia Int'l, Inc. v. Twl Skill Ventures, LLC*, 2009 U.S. Dist. LEXIS 126495, at *3-4 (S.D. Tex. 2009). Courts in the Fifth Circuit have interpreted section 1334(c)(2) as involving a five-part test:

Under 28 U.S.C. § 1334(c)(2), a district court must abstain from hearing a proceeding if the following requirements are met: (1) a motion has been timely filed requesting abstention; (2) the cause of action is essentially one that is premised on state law; (3) the proceeding is non-core or related to the bankruptcy

14

case; (4) the proceeding could not otherwise have been commenced in federal court absent the existence of the bankruptcy case; and (5) the proceeding has already been commenced and can be timely adjudicated in a state court forum.

*First Bank v. Arafat*, 2006 U.S. Dist. LEXIS 64562, at \*9 (S.D. Tex. Sept. 11, 2006).

Neither party disputed that the first two elements of mandatory abstention have been satisfied: AT&T filed a timely motion requesting mandatory remand/abstention[6] and the underlying suit is entirely premised on state law. LXI argued that mandatory abstention did not apply because its claims against AT&T constituted core proceedings. The court has already found otherwise. LXI also argued (in its pleadings) that mandatory abstention did not apply because the proceeding could have otherwise been commenced in federal court based on federal question jurisdiction. This argument was not addressed at the hearing and the court will not devote a great deal of time to it here save to say that federal question jurisdiction clearly does not exist here. *See Budget Prepay, Inc. v. AT&T Corp.*, 605 F.3d 273, 280 (5th Cir. Tex. 2010) ("A complaint creates federal question jurisdiction "when it states a cause of action created by state law and (1) a federal right is an essential element of the state claim, (2) interpretation of the federal right is necessary to resolve the case, and (3) the question of federal law is substantial."). The state court suit could not have been otherwise commenced in federal court absent the bankruptcy case.

The remaining mandatory abstention element to be examined concerns whether the proceeding can be timely adjudicated in the state court. "The party moving for mandatory abstention need not show that the action can be *more timely* adjudicated in state court, but only that the matter can be timely adjudicated in state court." *J.T. Thorpe Co. v. Am. Motorists*, 2003 U.S. Dist. LEXIS 26016, at \*12 (S.D. Tex. 2003). Regarding the burden of proof on the issue of whether a case can be timely adjudicated in state court, the District Court for the Southern District of Texas has stated:

US Fire [the party opposing abstention] correctly cites *WRT* [*Creditors Liquidation Trust*, 75 F. Supp. 2d 596, 605 (S.D. Tex. 1995)], for the proposition

---

[6] In truth, AT&T did not file a pleading entitled "motion to abstain." It filed a motion for remand. Technically, the two forms of relief are different – at least Congress apparently thought they were different, as each has its own separate statute. Abstention is governed by section 1334(c) of title 28, while removal and remand is governed by section 1452 of title 28. It could be argued that AT&T is not entitled to relief under section 1334(c) on grounds that its pleadings do not support that form of relief. However, as this court has observed on other occasions, the courts have chosen to elide abstention and remand, permitting the abstention remedy to be invoked in the context of removal, and essentially ignoring Congress' design as expressed in the statute. *See Lozano v. Swift Energy Co. (In re Wright)*, 231 B.R. 597, 603-04 (Bankr. W.D.Tex. 1999) (renaming the judicially created remedy "mandatory remand"). The court chooses not to try to continue to sweep the waves back into the sea. Accordingly, the court entertains the remedy here as appropriately invoked in the context of a motion to remand, though the court suggests that the better (and fairer) practice is to expressly plead the relief one intends to seek.

that a naked assertion that the matter can be timely adjudicated in the state court, without more is insufficient to satisfy the requirement of mandatory abstention. *Id*. at 605-606. However, the very next sentence in *WRT* also points out that 'when faced with a motion to remand, it is the defendant's burden to establish the existence of federal jurisdiction over the controversy.' *Id*. 606. Arguably, the burden may be different where the issue is whether Congress has mandated that the Court not exercise its jurisdiction rather than whether federal jurisdiction exists in the first place. Regardless, the courts that have noted that naked allegations are not sufficient to establish that the matter can be timely adjudicated in a state court have not required much in the way of proof to establish this element when the non-movant failed to present any counter evidence.

*J.T. Thorpe Co. v. Am. Motorists*, 2003 U.S. Dist. LEXIS 26016, at *13-14 (S.D. Tex. 2003) (citations omitted); *see also WRT Creditors Liquidation Trust*, 75 F. Supp. 2d at 606 (finding that movant's evidence that state trial docket was not congested and that trial would likely occur within the next year sufficient to establish timely adjudication where non-movant had failed to provide any evidence negating the likelihood of a timely adjudication in state court). At the hearing AT&T introduced a letter from the state court judge asserting that the parties' dispute could be timely adjudicated in state court.[7] LXI did not present any evidence to the contrary. This court is satisfied that the "timely adjudication" element of mandatory remand/abstention has been satisfied.

In sum, because LXI's state court suit (including AT&T's counterclaims) involves only state law claims that are non-core, because no other basis for federal jurisdiction (other than bankruptcy jurisdiction) exists, and because AT&T has shown that the case can be timely adjudicated in state court, mandatory abstention/remand applies.

---

[7] The letter was admitted over the objection of LXI, which claimed the letter was hearsay. AT&T countered that the letter fell within an exception to the hearsay rule, permitting records of governmental activities. *See* Fed.R.Evid. 803(8). The court agreed, noting that the exception was broadly drafted to include "... statements ... in any form, of public offices ... setting forth (A) the activities of the office ..." *See id.* The letter was authored by the judge presiding over the administration of the jury docket in Bexar County, and set out the dates, as of the date of the letter, that are next available for jury trials in the district courts of Bexar County. While the dates are prospective, they are dates that, as of the date of the letter, remain available for litigants planning their own trial schedules. Thus, the letter is in fact a statement of a public office delineating the docket activity of the state district court for this county. The rule acknowledges the presumed reliability of such statements, coupled with a recognition that the alternative would be to call the officer to testify live at the hearing, imposing an unnecessary cost on the governmental agency. When the agency is a court, there is the added indignity of requiring a sitting judge to testify under oath in another tribunal about routine matters, and to be cross-examined thereon. Such an exercise is disrespectful of the dignity that ought to be accorded fellow members of the judiciary. The court deems such letters a proper means of establishing the "timely adjudicate" element of mandatory abstention, and believes them to be properly admissible under Rule 803(8) of the Federal Rules of Evidence.

The court is reluctant to reward AT&T's blatant forum shopping in this case. AT&T filed a jury demand and refused to consent to a jury trial in this court in an effort to bolster its argument that the parties' dispute could be timely adjudicated in state court: AT&T's refusal to consent to a jury trial here meant that even if the court retained jurisdiction over the parties' dispute, the case would have to be tried in the federal district court, assuring AT&T that it would have a different judge to hear the case. That would also almost certainly mean that the case would not likely be heard for quite some time. Furthermore, it is not entirely clear that the parties' dispute, as it currently stands, involves any factual issues for a jury to decide – the request of declaratory relief will not go beyond the terms of the contract itself unless there is ambiguity in the agreement (or unless the contract itself is found to point outside itself for the determination or application of its terms). Thus, AT&T's jury demand machinations appear to be nothing more than an effort to forum shop. Nonetheless, as noted above, the question is not whether the case can be *more* timely adjudicated in state court than in the bankruptcy or district court; the question is simply whether it can be timely adjudicated in state court. AT&T established that it could be timely adjudicated in state court, and the court's determination to that effect did not depend upon a finding that the case could not be timely adjudicated in the district court. And there is nothing in section 1334(c)(2) that permits a court to deny relief on grounds that the effort is motivated by a desire to forum shop. Indeed, the sad truth is that the structure of bankruptcy jurisdiction actually encourages and rewards forum shopping strategies. There is little this court can about that, other than to encourage Congress to consider the consequences that seem to flow from the current structure.

### Conclusion and Order

The court concludes that mandatory abstention applies in this case, and that remand is thus necessary. Accordingly, this adversary proceeding is remanded to state court for ultimate determination of the parties' dispute.

# # #